**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Wayne LOWHORN,**
**Defendant–Appellant.**

**No. 99–6641.**

United States Court of Appeals, Sixth Circuit.

March 20, 2001.

Before KEITH, ALAN E. NORRIS, and DAUGHTREY, Circuit Judges.

PER CURIAM.

The defendant, Michael Wayne Lowhorn, entered pleas of guilty to charges of assault and of wanton endangerment, stemming from an attempt to run over a park ranger with an automobile and from a high speed car chase in the Mammoth Cave National Park area. The district judge sentenced Lowhorn to concurrent terms of 77 months and 60 months in prison and concurrent terms of three years on supervised release. Additionally, the judge directed the defendant to pay a $200

special assessment and to make a $1,521.19 restitution payment for damages inflicted upon law enforcement vehicles during the criminal activity. Lowhorn now appeals to this court, alleging that adjustments to his base offense level constituted improper double counting of sentencing factors. The government appropriately concedes error in the application of the specific offense characteristic described in U.S.S.G. § 2A2.2(b)(2)(B). It follows that Lowhorn's sentence must be vacated and the case remanded for resentencing on that basis. We further conclude, however, that the remainder of the defendant's sentence was properly calculated, including the application of sentencing adjustments for both assault upon a law enforcement officer while the defendant was fleeing from an offense, U.S.S.G. § 3A1.2(b), and for reckless endangerment of other individuals during that flight, U.S.S.G. § 3C1.2.

## FACTUAL AND PROCEDURAL BACKGROUND

During the evening hours of February 27, 1999, law enforcement officials in and around Kentucky's Mammoth Cave National Park received word that a white Camaro with Tennessee license plates was being driven erratically. Edmonson County Deputy Sheriff Terry Blanton located the offending motorist and activated his siren and blue lights to effect a traffic stop. Rather than heeding the emergency signals, however, the driver of the Camaro "stomped" on the accelerator and led Blanton on a high-speed chase through the park and surrounding areas at speeds of 90 miles per hour, despite the hazardous conditions created by the dark and by the heavy rain that was falling that night. Blanton estimated that during the course of the chase, the Camaro and Blanton passed at least four vehicles traveling in their same direction and other vehicles traveling in the opposite direction. The Camaro's driver, later determined to be the defendant, also ignored stop signs and other traffic signals and was ultimately able to elude Blanton when the deputy's vehicle slid off the slick roads.

Eventually, Park Ranger John Logsdon and Brownsville Police Chief Don Ray Meredith parked their official vehicles across a road to block Lowhorn's path. The roadblock served its intended purpose of stopping the defendant, but when Ranger Logsdon then approached the Camaro, Lowhorn again accelerated rapidly and drove straight toward the ranger before veering around the police cars and away from imminent capture. In order to avoid being run over by the defendant, Logsdon leapt into a nearby ditch, thereby hindering his efforts to pursue the fleeing motorist effectively.

Authorities were able to capture Lowhorn the following day, and a grand jury indicted the defendant for an assault upon Logsdon with a dangerous weapon (the Camaro), wanton endangerment of Deputy Blanton, and wanton endangerment of the defendant's passenger, his wife. In exchange for the government's agreement to dismiss the charge of endangerment involving Lowhorn's wife, the defendant entered guilty pleas to the remaining two charges.

At sentencing, the district court determined that the defendant should be sentenced in accordance with the guideline for aggravated assault, U.S.S.G. § 2A2.2, because Lowhorn had used a dangerous weapon, the car, "with intent to do bodily harm (i.e., not merely to frighten)." U.S.S.G. § 2A2.2, comment. (n.1). The court then increased the base offense level of 15 by four additional levels because "a dangerous weapon ... was otherwise used." U.S.S.G. § 2A2.2(b)(2)(B). An additional three levels were added because the victim of the assault was a law enforcement officer, see U.S.S.G. § 3A1.2(b), and

another two levels added due to the fact that Lowhorn "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. The resulting offense level of 24 was then reduced three levels for acceptance of responsibility, and the defendant was ordered to serve the minimum 77–month sentence applicable to an individual with a calculated offense level of 21 and a criminal history category of VI.

## DISCUSSION

Before this court, the defendant first asserts that the district court engaged in improper "double counting" when it initially elevated the assault upon Ranger Logsdon to aggravated assault by terming the defendant's vehicle a dangerous weapon and then further increasing the offense level by applying a specific offense characteristic applicable only when a dangerous weapon is "otherwise used." In presenting his argument, Lowhorn directs this court to the ruling in *United States v. Farrow*, 198 F.3d 179 (6th Cir.1999), which was issued subsequent to the district court's sentencing determination in this case.

In *Farrow*, we addressed an analogous situation in which a defendant had also attempted to run over law enforcement officials with an automobile and, consequently, also had his assault conviction sentenced as an aggravated assault *and* had his base offense level increased four levels pursuant to U.S.S.G. § 2A2.2(b)(2)(B) for "otherwise us[ing]" a dangerous weapon (a car). There, we vacated the defendant's sentence and remanded the matter to the district court for further proceedings because Farrow "did not 'otherwise use' his car in his assault on [the law enforcement official], as distinct from the conduct that brought his offense within the 'aggravated assault' guideline in the first instance." *Id.* at 195. Instead,

we noted that in sentencing the defendant in that case, the district court impermissibly counted the single act of driving a vehicle at a law enforcement officer "both to treat his offense as an 'aggravated assault' with a base offense level of 15, and to apply a four-level enhancement under § 2A2.2(b)(2)(B) for 'otherwise us[ing]' his car in his assault." *Id.*

■ For all practical purposes, the legal principles present in this appeal do not differ from those in *Farrow*. The government recognizes that very fact and concedes that the district court's addition of four offense levels for otherwise using a dangerous weapon in this crime was improper. Thus, we must vacate the sentence imposed upon Lowhorn and remand the matter for resentencing without application of § 2A2.2(b)(2)(B) provisions.

■ Lowhorn further contends that improper double counting occurred when the district court increased his base offense level three points for assaulting a law enforcement officer, *see* U.S.S.G. § 3A1.2(b), and two additional points for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. In advancing that argument, however, Lowhorn evidences a basic misunderstanding of the district court's application of those two sentencing guidelines provisions. Had the two adjustments to the defendant's appropriate offense level been made to address effects either upon a single victim or resulting from a single act committed at a single place, Lowhorn's argument might well have merit. *See, e.g., United States v. Hayes*, 135 F.3d 435, 438 (6th Cir.1998) (holding adjustments under both § 3A1.2(b) and § 3C1.2 to be improper when young passenger in defendant's car was injured as defendant accelerated to run over officers because there is "no sen-

sible way to distinguish the conduct that formed the basis for the two enhancements"). In this case, however, the two adjustments were applied to address separate instances of harm caused by factually distinct actions of the defendant.

First, the three-level adjustment for assault on an "official victim" involved the attempt to run over Ranger Logsdon and was justified because of the special need to deter criminal defendants from knowingly attacking law enforcement officials carrying out their governmental duties. Second, the adjustment pursuant to U.S.S.G. § 3C1.2 for reckless endangerment during flight was *not* directed at conduct involving Lowhorn's confrontation with Logsdon. Rather, the district court imposed the additional sentence adjustment for the defendant's recklessness in the spatially and temporally separate act of speeding on rain-slick roadways past and around numerous civilian vehicles. Given the circumstances of this case, there can be little doubt that a 90–mile–per–hour chase through pouring rain created a substantial risk of death or serious bodily injury to individuals other than Logsdon, threatening the safety of those motorists who innocently happened into the path driven by the defendant on the evening in question.

### CONCLUSION

The government appropriately concedes that Lowhorn's base offense level of 15 could not be raised four levels for the same action that transformed the defendant's assault upon Ranger Logsdon into an aggravated assault for sentencing purposes. We conclude, however, that the district court correctly adjusted Lowhorn's offense level upward five additional levels for both the fact that the assault was upon a law enforcement officer and the fact that other civilians were recklessly endangered by the defendant's callous actions. Consequently, we VACATE Lowhorn's sentence and REMAND the case to the district court for resentencing.